Filed 12/20/24  P. v. McCulley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100000 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F03538) |
| v. | |
| LESLIE McCULLEY, | |
| Defendant and Appellant. | |

Defendant Leslie Marie McCulley[1] appeals from the trial court's denial of her petition for resentencing under Penal Code[2] section 1172.6.[3]  A jury found her guilty of

---

[1]    Defendant's name appears as "Leslie Marie McCulley" and Leslie McCulley" in the record.  We use defendant's name as it appears on the abstract of judgment.

[2]    Further undesignated statutory references are to the Penal Code.

[3]    Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  Defendant cited former

1

the deliberate and premeditated attempted murder of a police officer. The jury was instructed on direct perpetrator and direct aiding and abetting principles but not on the natural and probable consequences doctrine. The trial court found defendant failed to make a prima facie case because the jury instructions and verdicts showed defendant was not convicted of attempted murder under the natural and probable consequences doctrine.

On appeal, defendant contends the trial court erred in denying the petition at the prima facie stage because she could have produced evidence at an evidentiary hearing showing she lacked the requisite malice for an attempted murder conviction as she was not present when her accomplice attempted to shoot the police officer. She also initially argued that we should order the trial court to strike a one-year prior prison term enhancement and conduct a full resentencing hearing under section 1172.75, but now concedes the issue is moot because a petition to recall and resentence under section 1172.75 has since been filed and is pending in the trial court.

We conclude the trial court properly denied defendant's section 1172.6 petition at the prima facie stage, and given defendant's mootness concession, we do not address her section 1172.75 claim. We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Charges*

Defendant was charged with the attempted murder of a police officer, who defendant knew or reasonably should have known was a peace officer engaged in performing his duties. It was further alleged that the attempted murder was willful, deliberate, and premeditated. Defendant was also charged with operating a motor vehicle

---

section 1170.95 in her petition, but we will refer to the current section 1172.6 throughout this opinion.

2

with the intent to recklessly evade or flee a pursuing peace officer, being a felon in possession of a firearm, and unlawful purchase and receipt of a stolen vehicle.

For the attempted murder charge, it was alleged that defendant, a principal in the offense, was armed with a firearm, and for the reckless evasion offense it was alleged that defendant personally used a firearm. A prior prison term enhancement for a drug conviction was also alleged.

## II

### *The Police Pursuit And The Shooting*

We summarize the pertinent facts from our prior opinion in *People v. McCulley* (Apr. 21, 2015, C075333) (nonpub. opn.) (*McCulley*) affirming defendant's judgment.[4] We do not rely upon this factual summary in reaching our decision, but instead paraphrase it to give context to our discussion.

In May 2012, Sacramento officers engaged in a high-speed pursuit of a stolen sedan with four occupants. (*McCulley*, *supra*, C075333.) The sedan drove at excessive rates of speed through residential neighborhoods and a crowded schoolyard, and police twice called off the pursuit due to public safety concerns. (*Ibid*.) At one point, the car abruptly stopped, and two men jumped out. (*Ibid*.) A short time later, officers found the sedan abandoned. (*Ibid*.)

Another officer saw defendant and a man, whom defendant later identified as her boyfriend Lucas Webb, walking rapidly down a nearby street. (*McCulley*, *supra*, C075333.) When he approached them, Webb "immediately became upset and protested that he was not on parole." (*Ibid*.) Webb made furtive movements with his hands and the officer drew his weapon for safety. (*Ibid*.) Webb fled and the officer followed with

---

[4] We take judicial notice of our prior unpublished opinion in *McCulley*, *supra*, C075333. (Evid. Code, §§ 452, subd. (d)(1), 459; *Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1433, fn. 2.)

defendant trailing the officer. (*Ibid.*) "A canine officer arrived and took over the chase." (*Ibid.*) While defendant struggled with other officers who attempted to take her into custody, several gunshots were heard. (*Ibid.*) Webb shot and severely injured the canine who pursued him into some shrubbery, and then Webb pointed his gun at the canine officer and shot. (*Ibid.*) The officer returned fire, killing Webb. (*Ibid.*)

When questioned at the scene, defendant initially said she had been driving the sedan during the pursuit and that only she and Webb were in the car. (*McCulley*, *supra*, C075333.) She later admitted that two other passengers had been in the car. (*Ibid.*) Her hands tested positive for gunshot residue. (*Ibid.*)

During a subsequent police interview, defendant said Webb had previously killed an officer, "had an outstanding warrant[,] and never complied with police efforts to initiate a contact," an attitude she shared. (*McCulley*, *supra*, C075333.) Defendant later admitted that Webb had been driving during the entire chase, which she concealed from officers to keep Webb from going to prison. (*Ibid.*) She also initially "claimed that she had brought the gun with them on the trip," but once she was informed Webb had died, she said the gun was Webb's. (*Ibid.*) When questioned about the gunshot residue on her hands, defendant claimed she had accidentally fired the gun during the chase; "she had taken it from Webb when he was grabbing for it to prevent him from using it." (*Ibid.*) She then turned around while waving the gun and told the protesting passengers to quiet down; after they had lost the police, she told the passengers to exit the car. (*Ibid.*) While abandoning the car, she accidentally shot out the rear passenger-side window after which Webb took the gun back from her. (*Ibid.*)

In multiple jail phone calls, defendant said she stayed with Webb when they released their passengers to help him, that she had taken the gun from Webb to prevent him from using it, and that she had accidentally fired the gun while abandoning the car. (*McCulley*, *supra*, C075333.) During one call she recounted telling Webb, " 'You['re] always talkin' about, . . . you got to get that motherfucker out Luc[as] or throw it to me

4

and I will.' " (*Ibid*.) In another call she clarified that she had told Webb he was always saying he was going to " ' "shoot him in the face" ' " and when the cops approached them, she looked at Webb and said, " ' "Are you goin' to pull the motherfucker? If you don't want to pull the motherfucker, you better throw it back to me 'cause I'll handle that shit." ' " (*Ibid*.) She later said she told Webb, " ' "Go. You know what to do. If you don't do it throw it back to me and I'll get rid of 'em." ' " (*Ibid*.)

One of the passengers in the sedan first told officers that during the chase defendant looked as if she were pointing the gun at the pursuing police car, and he believed that she encouraged Webb not to stop. (*McCulley*, *supra*, C075333.) In a second interview, he made the same assertions and said she might have said something about shooting the police. (*Ibid*.) At trial, the passenger testified inconsistently that defendant did not point the gun towards the pursuing police car and did not announce an intention to shoot the police; he also testified that "it was Webb, and not defendant, who said they were not going to stop during the pursuit." (*Ibid*.)

### III

#### *The Jury Instructions And Jury Verdicts*

The trial court instructed the jury on general aiding and abetting principles (CALCRIM No. 400) as well as direct aiding and abetting of target offenses (CALCRIM No. 401). The court also instructed the jury on intoxication (CALCRIM No. 404), attempted murder (CALCRIM No. 600), and premeditation and deliberation (CALCRIM No. 601). The court did not instruct on aiding and abetting unintended crimes based on the natural and probable consequences doctrine.

CALCRIM No. 400, as given, stated: "A person may be guilty of a crime in two ways. One, she may have directly committed the crime. I will call that person the perpetrator. Two, she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of the crime whether she committed it personally or aided and abetted the perpetrator."

For intended crimes, CALCRIM No. 401, as given, informed the jury that "[t]o prove . . . defendant [wa]s guilty of a crime based on aiding and abetting that crime," the prosecution had to prove (1) "the perpetrator committed the crime;" (2) "defendant knew that the perpetrator intended to commit the crime;" (3) "[b]efore or during the commission of the crime, . . . defendant intended to aid and abet the perpetrator in committing the crime;" and (4) "defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." The jury was further instructed, in part, that "[s]omeone *aids and abets* a crime if she knows of the perpetrator's unlawful purpose and she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." If all of these requirements were proved, the jury was informed, "defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor."

Using CALCRIM No. 404, the trial court instructed the jury that if it concluded defendant was intoxicated, i.e., that she had "used any drug that caused an intoxicating effect," "at the time of the alleged crime, [it could] consider this evidence in deciding whether . . . defendant" (1) "[k]new that the perpetrator (Luc[a]s Webb) intended to commit the crimes and allegations alleged in [the attempted murder, reckless evasion, and stolen vehicle] [c]ounts" and (2) "[i]ntended to aid and abet the perpetrator (Luc[a]s Webb) in committing the crimes and allegations alleged in [the attempted murder, reckless evasion, and stolen vehicle] [c]ounts."

For attempted murder, the trial court instructed the jury with CALCRIM No. 600, which provided in part: "To prove that . . . defendant is guilty of attempted murder, the [prosecution] must prove that:" (1) "The perpetrator (Luc[a]s Webb) took at least one direct but ineffective step toward killing another person;" (2) "[t]he perpetrator (Luc[a]s Webb) intended to kill that person; and" (3) "defendant aided and abetted the perpetrator (Luc[a]s Webb) as set forth in [j]ury [i]nstructions [Nos.] 400 and 401 in the [a]ttempted

6

[m]urder." "A direct step," the court explained, "indicates a definite and unambiguous intent to kill."

The trial court also instructed the jury with CALCRIM No. 601 as follows: "If you find . . . defendant guilty of attempted murder . . . , you must then decide whether the [prosecution] ha[s] proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation. [¶] The principal (Luc[a]s Webb) acted *willfully* if he intended to kill when he acted. The principal (Luc[a]s Webb) *deliberated* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The principal (Luc[a]s Webb) *premeditated* if he decided to kill before acting." The court further instructed, "The attempted murder was done willfully and with deliberation and premeditation if either . . . defendant or the principal (Luc[a]s Webb) or both of them acted with that state of mind."

The jury found defendant guilty of the charged offenses and found the attached enhancements true. The trial court found the prior prison term enhancement true. The court sentenced defendant as follows: Fifteen years to life for the attempted murder, plus one year for the firearm arming enhancement; three years for reckless evasion, plus 10 years for the firearm use enhancement; and a consecutive eight months each for the felon in possession and unlawful purchase or receipt of a stolen vehicle convictions. The court also imposed a consecutive one year for the prior prison term enhancement. Defendant's judgment was affirmed on appeal. (*McCulley*, *supra*, C075333.)

IV

*The Petition For Resentencing*

In October 2022, defendant filed a section 1172.6 petition for resentencing on her attempted murder conviction. She declared that she had been charged with attempted murder; that the information allowed the prosecution to proceed on a natural and probable consequences theory of attempted murder; that she had been convicted of attempted murder following a trial; and that she could not presently be convicted of

7

attempted murder under the current law. Although defendant did not request the appointment of counsel, the trial court appointed the public defender to represent her on the petition.

The prosecution opposed the petition, arguing defendant was ineligible for relief because the record of conviction, including the jury instructions and jury findings, showed the jury did not convict her of attempted murder under the natural and probable consequences doctrine. It attached copies of the jury's verdicts and certain jury instructions regarding aiding and abetting, attempted murder, premeditation and deliberation, and intoxication.

In reply, defendant asserted she had made a sufficient prima facie showing. She also argued that the jury's true finding that the attempted murder was premeditated and deliberate did not conclusively establish she was ineligible for relief as a matter of law.

In September 2023, the trial court issued a tentative order denying defendant's petition and setting the matter for a prima facie hearing. The court tentatively found that defendant was not eligible for relief because the jury was not instructed on the natural and probable consequences doctrine. Instead, the court found the jury instructions given contained only two potential theories of liability for the attempted murder: that defendant committed the attempted murder herself, or that she directly aided and abetted Webb in the attempted murder. The court found that defendant's case was controlled by *People v. Cortes* (2022) 75 Cal.App.5th 198.

At a prima facie hearing in November 2023, the parties submitted on their briefs and the trial court adopted the tentative ruling as its final ruling. The court found, based on the record of conviction, that defendant was not convicted of attempted murder based on the natural and probable consequences doctrine, as the trial court did not instruct on that theory of liability.

Defendant appeals.

DISCUSSION

I

*Applicable Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Lewis* (2021) 11 Cal.5th 952, 959.) Senate Bill 1437 also created a procedural mechanism in section 1172.6 for those convicted under the former law to seek retroactive relief under the law as amended. (Stats. 2018, ch. 1015, § 4; *Lewis*, at p. 957.) Senate Bill No. 775 (2021-2022 Reg. Sess.) later expanded the statute to apply to attempted murder under the natural and probable consequence doctrine and manslaughter. (Stats. 2021, ch. 551, § 2.)

In its current form, section 1172.6 applies to those "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" or a person convicted of attempted murder based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a).) To be eligible for relief, the defendant must make a prima facie showing that he or she could not presently be convicted of murder or attempted murder under changes to these theories of murder liability made effective on January 1, 2019, by Senate Bill 1437. (§ 1172.6, subd. (a)(3).) If the defendant makes a prima facie showing, the trial court must issue an order to show cause and conduct an evidentiary hearing where the prosecution bears the burden of proving beyond a reasonable doubt that the defendant could still be convicted of murder or attempted murder under current law. (§ 1172.6, subds. (c), (d).)

At the prima facie stage, the trial court may deny a resentencing petition only if the defendant is ineligible for relief as a matter of law. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) That is, the petition and the record of conviction must "establish conclusively that the defendant is ineligible for relief." (*Ibid*.) This is a pure question of law we review de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

While the trial court may look to the record of conviction after appointing defense counsel, the prima facie inquiry is limited. (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 971-972.) " ' "[T]he court takes [the defendant's] factual allegations as true and makes a preliminary assessment regarding whether the [defendant] would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Id*. at p. 971.) At that early stage, the trial court should not reject the defendant's factual allegations on credibility grounds or engage in factfinding that involves the weighing of evidence or the exercise of discretion. (*Id*. at pp. 971-972.) But if the record " ' "contain[s] facts refuting the allegations in the petition," then "the court is justified in making a credibility determination adverse to the [defendant]." ' " (*Id*. at p. 971.)

II

*Prima Facie Showing*

Defendant contends the trial court erred in denying her petition at the prima facie stage. She argues the court should have issued an order to show cause and held an evidentiary hearing so she could put on evidence that she lacked malice for the attempted murder conviction, especially since she was not at the scene when Webb shot towards the officer. We are not persuaded.

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623; see *People v. Smith* (2005) 37 Cal.4th 733, 739.) For purposes of the offense, "[i]ntent to unlawfully kill and express malice are, in essence,

'one and the same.' " (*Smith*, at p. 739.)  To be guilty of attempted murder, a defendant must harbor express malice toward the particular victim (*ibid*.), *unless* that malice is imputed to the defendant under some other theory such as the natural and probable consequences doctrine.  Under that doctrine, an aider and abettor may be culpable for a nontarget, or unintended, offense committed while committing a target offense. (*People v. Favor* (2012) 54 Cal.4th 868, 874.)  The natural and probable consequences doctrine thus "imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense."  (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 852.)

The plain language of section 1172.6 provides relief only to those persons convicted of attempted murder *based on the natural and probable consequences doctrine*. (§ 1172.6, subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court"].)  In other words, section 1172.6 "applies by its terms *only* to attempted murders based on the natural and probable consequences doctrine."  (*People v. Coley* (2022) 77 Cal.App.5th 539, 548, italics added.)

Here, it is undisputed that the trial court did not instruct the jury on the natural and probable consequences doctrine.  Because the jury was never instructed on this vicarious liability theory, the jury could not have improperly imputed malice to her under the natural and probable consequences doctrine.

Instead, as the People argue, the jury necessarily convicted defendant as a direct aider and abettor who harbored an intent to kill.  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 ["outside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator"]; *People v. Perez* (2005) 35 Cal.4th 1219, 1225 [under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent

11

and [with] an intent to assist in achieving those unlawful ends"].) As a direct aider and abettor of the attempted premeditated murder, the jury necessarily found that defendant shared Webb's murderous intent and assisted him in attempting to achieve that unlawful result. The fact that defendant was struggling with other officers while they attempted to take her into custody and was not present when Webb shot at the officer does not mean the jury improperly imputed malice to defendant. As the jury was properly instructed, "[i]f all of [the aiding and abetting] requirements are proved, . . . defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor."

Based on the instructions given and the jury's verdicts, the record of conviction conclusively establishes that defendant is not eligible for resentencing relief as a matter of law. (See e.g., *People v. Cortes*, *supra*, 75 Cal.App.5th at p. 204 [the defendant failed to state prima facie case for relief because he was convicted of murder and attempted murder either as perpetrator or direct aider and abettor, and not under natural and probable consequences doctrine or theory under which malice is imputed]; *People v. Coley*, *supra*, 77 Cal.App.5th at p. 548 [trial court not required to grant resentencing on attempted murder count where the record showed the jury was not instructed on the natural and probable consequences doctrine].) The trial court did not err in denying the petition at the prima facie stage.[5]

---

[5] Because defendant concedes her second claim on appeal—that the matter should be remanded with directions for the trial court to conduct a resentencing hearing under section 1172.75—is moot as a resentencing petition is now pending before the trial court, we need not consider the section 1172.75 issue or the People's argument that this court lacks jurisdiction to address the claim. (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321 [" '[i]t is not the function of the appellate court to render opinions " ' " 'upon moot questions or abstract propositions, or . . . declare principles or rules of law [that] cannot affect the matter in issue in the case before it' " ' " ' "].)

DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
MAURO, J.

/s/_____
MESIWALA, J.